UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CYTEC INDUSTRIES, INC.,

                            Plaintiff,                                  14-cv-1561 (PKC)

        -against-                                      MEMORANDUM AND ORDER

ALLNEX (LUXEMBOURG) & CY S.C.A.,

                            Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Cytec Industries, Inc. ("Cytec") moves to compel the production of certain documents withheld by Allnex (Luxembourg) & Cy S.C.A ("Allnex") on the grounds of the attorney-client privilege. The underlying dispute arises out of the sale by Cytec to Allnex of Cytec's coatings resins business.[1] The parties have claims against each other relating to the representations and warranties made in connection with the transaction.

        To effectuate the sale of the coatings resins business, Cytec conducted a bidding process. It set up a virtual data room where potential bidders could view documents in order to formulate a bid.

        The purportedly privileged documents are communications to or from Allnex and Ernst & Young (or one of its affiliates) ("E&Y"), Environ Germany GmbH ("Environ") and Marsh & McLennan Companies, Inc. ("Marsh"). Allnex hired E&Y to conduct financial due diligence on Allnex's behalf in connection with its decision to acquire the coatings resins business. Environ was hired to provide environmental due diligence of the various sites at which

---

[1] Allnex was the actual purchaser of the coating resins business, but Advent International GmbH ("Advent") was the private equity sponsor that advised and acted for Allnex on the transaction. Advent and Allnex were collectively the client and, for convenience, are referred to as "Allnex."

the coatings resins business operated, and it assessed potential environmental liabilities and exposure. Marsh was retained after the acquisition to help place insurance for environmental liabilities.

Discussion

"The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997). Here, New York law governs the inquiry because subject matter jurisdiction is based on diversity of citizenship, and the underlying agreement is governed by New York law "without regard to principles of conflicts of law." (SAPA § 8.8.) See Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); Dixon v. 80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975) ("[I]n a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York.").

"The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." Ambac Assurance Corp. v. Countrywide Home Loans, Inc., __ N.Y.3d __, 2016 WL 3188989 (N.Y. June 9, 2016). "[N]o ready test exists for distinguishing between protected legal communications and unprotected business or personal communications; the inquiry is necessarily fact-specific." Rossi v. Blue Cross & Blue Shield of Greater New York, 73 N.Y.2d 588, 593 (1989). For a communication to be privileged, it "must be made for the purpose of facilitating the rendition of legal advice or services." Id. "So long as the communication is primarily or predominantly of a legal character,

the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters," because "the nature of a lawyer's role is such that legal advice may often include reference to other relevant considerations." Id. at 594.  "Because the privilege shields from disclosure pertinent information and therefore constitutes an 'obstacle' to the truth-finding process, it must be narrowly construed." Ambac, __ N.Y.3d at __, 2016 WL 3188989 (quotation marks omitted).

In the context of this transaction, the shorthand phrase "due diligence" review describes the inquiry made by Allnex before deciding whether and how much to bid on the coatings resin business.  Other matters at issue on this motion include the negotiation, drafting and post-execution implementation of the Stock and Asset Purchase Agreement dated October 8, 2012 ("SAPA").  The law firm of Freshfields Bruckhaus Deringer US LLP ("Freshfields") principally represented Allnex.

An assessment of the business risk of acquiring an enterprise is not inherently a legal task, nor is valuing the enterprise for the purpose of making a bid.  On the other hand, the client – i.e., the would-be acquirer – may wisely consult its lawyer for advice on the contractual rights and obligations of the target and its potential liabilities.  The client or the lawyer may use third parties with expertise who are capable of explaining technical or financial data for the purpose of facilitating legal advice.

In this Circuit, courts have recognized that, just as a lawyer's use of an interpreter to facilitate communication with a client who spoke a foreign language would not destroy the privilege, so too the use of other types of experts would not necessarily destroy the privilege. United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961), observed that accounting concepts function like "a foreign language to some lawyers in almost all cases, and to almost all lawyers

in some cases," meaning that "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  See also People v. Osorio, 75 N.Y.2d 80, 84 (1989) ("communications made to counsel through . . . one serving as an agent of either attorney or client to facilitate communication, generally will be privileged.") (citing Kovel).  Kovel emphasized that in order for privilege to attach, the communication must "be made in confidence for the purpose of obtaining legal advice from the lawyer," and not be made for the purpose of rendering accounting services or advice.  Id.

This limitation on the privilege was applied in United States v. Ackert, 169 F.3d 136 (2d Cir. 1999), which concluded that no privilege attached to communications that an attorney had with a non-client investment banker about the client's potential tax liability.  There, the investment banker did not act as a "translator or interpreter of client communication" for the attorney, and merely provided additional information relevant to the client's tax situation.  Id. at 139-40.

Thus, the standard is not whether the third party's role "proves important to the attorney's ability to represent the client," but whether its purpose is to "improve the comprehension of the communications between attorney and client."  Id. at 139.  The principle is broad enough to encompass the attorney's confidential communication with the third party at the client's behest for the purpose of explaining the client's legal obligations so that the third party may advise the client in its area of expertise.  Finally, in a non-audit context, a confidential communication by a client to both a lawyer and accountant for the purpose of obtaining advice on the interpretation of a term may turn on legal or accounting principles, or both, but that does

not destroy the privileged nature of the client's inquiry to the lawyer, nor of the lawyer's response that is also sent to the accountant.

While, as discussed below, some communications by or through E&Y and Environ meet this standard, the same is not true in the case of Marsh, Allnex's insurance broker. Marsh's role was fundamentally different. It was engaged to place insurance coverage. Some understanding of the client's legal exposure might be needed to fulfill this assignment, but the task is primarily to locate a suitable insurer to accept the risk at an acceptable price. Communications between Marsh and Allnex and its lawyers were not for the purpose of facilitating legal advice to Allnex, and therefore are not privileged.

Allnex has submitted ten documents for in camera review, which were selected by Cytec based upon descriptions in Allnex's privilege log. With a single exception (Document 5), a redacted version of the document has been produced. Applying the foregoing legal principles to the documents, the Court concludes as follows:

1. Transmittal to Environ team of chart setting forth Allnex's lawyers' interpretation of key contractual terms in the SAPA in order to aid Environ in advising the lawyers and client. Privileged upheld.[2]

2. E-mail chain from client to E&Y, lawyers and others regarding the working capital adjustment mechanism under the SAPA for cash left in the business. This was a confidential communication from the client simultaneously sent to the law firm representing Allnex and to E&Y for the purpose of understanding Allnex's legal rights in the event that the cash left in the business was less than contemplated. The answer could

---

[2] The numbers preceding the discussion correspond to the tab under which the documents were presented to the Court.

have turned on either contract interpretation or accounting principles or both, and the simultaneous communication of the question to both a lawyer and an accountant did not destroy the privilege.  Privilege upheld.

3. E-mail chain begins March 11, 2013 (12:59) with a question from the client addressed to both the lawyer and E&Y as to how to address specific environmental issues that arose after the execution of the SAPA.  While the privilege is upheld as to the March 11 inquiry, the response from Environ and the follow-up statement from the client were not guided by a desire to improve comprehension of the technical aspects of the problem so that legal advice could be rendered by the lawyers.  Rather, Environ offered its own plan of action to deal directly with Cytec.  Privilege not upheld except for the March 11 (12:59) email.

4. September 25, 2012 communication from E&Y to the law firm and others, in response to law firm inquiry.  It appears to be an explanation of the meaning of various terms of the SAPA from an accounting standpoint, highlighting potential issues.  It appears intended to improve the lawyer's comprehension of certain contractual language so that the lawyer may render legal advice to the client.  Privilege upheld.

5. The series of e-mails in September 2013 relate to E&Y's post-closing purchase price adjustments.  They do not seek or enable legal advice.  The one exception is a discussion with a Freshfields lawyer (e-mail September 26, 2013 20:08) as to which the privilege is upheld.  Privilege not otherwise upheld.

6-10. Series of e-mails to and from Marsh and Allnex's insurance counsel, relating to negotiation with insurers (or underwriters) of certain environmental risk coverage. Legal advice was not sought, rendered or facilitated. Privilege not upheld.

CONCLUSION

Within 21 days, Allnex shall produce the withheld communications that have been ordered produced and apply the Court's exemplar rulings to the broader array of withheld documents, producing those ruled to be non-privileged. Cytec's motion to compel is granted in part and denied in part with each side bearing its own attorneys' fees and costs.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 23, 2016