**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CYTEC INDUSTRIES INC.,　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　 Plaintiff,　　　　　 :
　　　　　　　 v.　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　 :　　No. 14 Civ. 1561 (PKC)
ALLNEX (LUXEMBOURG) & CY　　　　　 :
S.C.A.,　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　 Defendant.　　　　　 :
　　　　　　　　　　　　　　　　　　　 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**CYTEC INDUSTRIES INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

Joseph E. Neuhaus
Thomas C. White
Joshua S. Levy
James H. Shih
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Attorneys for Cytec Industries Inc.*

July 20, 2017

## <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND ......................................................................................3

    A.    The Parties' Environmental Dispute ....................................4

    B.    Document Discovery .............................................................5

    C.    Depositions and Expert Discovery .......................................6

    D.    Summary Judgment and Trial Preparation ...........................7

I.    CYTEC IS ENTITLED TO ATTORNEYS' FEES AND LITIGATION EXPENSES UNDER THE SAPA ..........................................8

II.    CYTEC'S REQUEST FOR FEES AND EXPENSES IS REASONABLE ....................10

    A.    The Fees and Expenses Cytec Actually Paid Are Presumptively Reasonable ......................................................11

    B.    Cytec's Counsel's Billing Rates Are Reasonable and Consistent with Prevailing Rates in New York for Complex Commercial Litigation ..........................................12

    C.    Cytec's Counsel Billed a Reasonable Number of Hours in Prosecuting the Environmental Claims in This Case ...........15

    D.    Cytec's Request for Litigation Expenses Is Reasonable ......................20

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abax Lotus Ltd.* v. *China Mobile Media Tech. Inc.*,
  149 A.D.3d 535 (1st Dep't 2017) ..........................................................................10

*Anderson* v. *YARP Rest., Inc.*,
  1997 WL 47785 (S.D.N.Y. Feb. 6, 1997)..............................................................12

*Antidote Int'l Films, Inc.* v. *Bloomsbury Pub., PLC*,
  496 F. Supp. 2d 362 (S.D.N.Y. 2007)...................................................................17

*Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008)............................................................................11, 19

*Austrian Airlines Oesterreichische Luftverkehrs AG* v. *UT Fin. Corp.*,
  2008 WL 4833025 (S.D.N.Y. Nov. 3, 2008)..........................................................21

*Bacolitsas* v. *86th & 3rd Owners, LLC*,
  2013 WL 10620139 (S.D.N.Y. Apr. 1, 2013)..........................................................10

*Chambless* v. *Masters, Mates & Pilots Pension Plan*,
  885 F.2d 1053 (2d Cir. 1989)...............................................................................20

*Diplomatic Man, Inc.* v. *Nike, Inc.*,
  2009 WL 935674 (S.D.N.Y. Apr. 7, 2009)................................................2, 11, 16

*F.H. Krear & Co.* v. *Nineteen Named Trs.*,
  810 F.2d 1250 (2d Cir. 1987)...............................................................................17

*Fox* v. *Vice*,
  563 U.S. 826 (2011).............................................................................................19

*Grant* v. *Martinez*,
  973 F.2d 96 (2d Cir. 1992)...................................................................................15

*Harris* v. *Fairweather*,
  2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).........................................................10

*Hensley* v. *Eckerhart*,
  461 U.S. 424 (1983)..........................................................................................2, 10

*King Vision Pay–Per–View Corp.* v. *Tardes Calenas Moscoro, Inc.*,
  2004 WL 473306 (S.D.N.Y. March 12, 2004) .......................................................21

*Krumme* v. *Westpoint Stevens Inc.*,
    79 F. Supp. 2d 297 (S.D.N.Y. 1999)........................................................................17

*LeBlanc–Sternberg* v. *Fletcher*,
    143 F.3d 748 (2d Cir. 1998)................................................................................20

*Lunday* v. *City of Albany*,
    42 F.3d 131 (2d Cir. 1994)..................................................................................19

*Marsion S. Mishkin Law Office* v. *Lopalo*,
    767 F.3d 144 (2d Cir. 2014)................................................................................18

*Mugavero* v. *Arms Acres, Inc.*,
    2009 WL 1904548 (S.D.N.Y. July 1, 2009) .....................................................20

*N.Y. State Ass'n for Retarded Children, Inc.* v. *Carey*,
    711 F.2d 1136 (2d Cir. 1983)............................................................................19

*Nat'l Union Fire Ins. Co.* v. *Hartel*,
    782 F. Supp. 22 (S.D.N.Y. 1992).......................................................................17

*Pfizer, Inc.* v. *Stryker Corp.*,
    348 F. Supp. 2d 131 (S.D.N.Y. 2004)..................................................................9

*McDonald ex rel. Prendergast* v. *Pension Plan of NYSA-ILA Pension Tr. Fund*,
    450 F.3d 91 (2d Cir. 2006)............................................................................15, 18

*Promuto* v. *Waste Mgmt., Inc.*,
    44 F. Supp. 2d 628 (S.D.N.Y. 1999)..................................................................10

*Reiter* v. *Metro. Transp. Auth.*,
    2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004)...................................................11

*Research Commc'ns, Ltd.* v. *Meredith Corp.*,
    2008 WL 4183440 (D. Conn. Sept. 10, 2008)....................................................19

*Serricchio* v. *Wachovia Secs., LLC*,
    706 F. Supp. 2d 237 (D. Conn. 2010)................................................................19

*Sulkowska* v. *City of New York*,
    170 F. Supp. 2d 359 (S.D.N.Y. 2001)................................................................21

*Themis Capital* v. *Democratic Republic of Congo*,
    2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)............................................. *passim*

*U.S. Football League* v. *Nat'l Football League*,  ...................................................20
    887 F.2d 408 (2d Cir. 1989)

*VFS Fin., Inc.* v. *Pioneer Aviation, LLC*,
    2009 WL 2447751 (S.D.N.Y. Aug. 11, 2009) ........................................................................15

*Webb* v. *Bd. of Educ.*,
    471 U.S. 234 (1985).............................................................................................................19

*Weiwei Gao* v. *Sidhu*,
    No. 2013 WL 2896995 (S.D.N.Y. June 13, 2013)...............................................................21

*Wells Fargo Bank, NA* v. *Konover*,
    2014 WL 3908596 (D. Conn. Aug. 8, 2014) .................................................................11, 16

## Other Authorities

Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore*, N.Y.L.J. (Jan. 13, 2014) .......................15, 20

Pursuant to this Court's Order dated July 6, 2017 (ECF No. 143), Cytec Industries Inc. ("Cytec") respectfully submits this Memorandum of Law in Support of its Motion for Attorneys' Fees and Litigation Expenses.

## PRELIMINARY STATEMENT

On March 7, 2014, Cytec filed a complaint against Allnex (Luxembourg) & Cy S.C.A. ("Allnex") concerning a dispute (now settled) arising out of the purchase price adjustment mechanism in the parties' October 8, 2012 Stock and Asset Purchase Agreement ("SAPA").  On March 26, 2014, Allnex sent Cytec a letter demanding reimbursement for obligations relating to environmental contamination on a Kalamazoo, Michigan property Allnex acquired under the SAPA.  After the parties were unable to resolve their dispute on this subject, Cytec amended its complaint on June 16, 2014 to seek a declaratory judgment that Allnex assumed the disputed environmental liabilities under the SAPA.  The amended complaint expressly asked for an award of "reasonable attorneys' fees."  (ECF No. 14 at 35.)

Allnex declined to settle the parties' environmental dispute on at least three separate occasions (including two separate mediations) and chose to fully litigate this case. Allnex moved to dismiss Cytec's environmental claim, which this Court denied; the parties then conducted discovery, producing nearly 60,000 documents, many of which were located outside the United States, took nine fact depositions, exchanged more than 100 pages of expert reports, and took two expert depositions; and, at the conclusion of discovery, the parties cross moved for summary judgment, submitting more than 150 pages of briefing.  The parties also undertook nearly full trial preparations, including preparing exhibit lists, designating and counter-designating depositions, drafting fact and expert witness declarations, negotiating objections, and briefing motions *in limine*.

After more than three years of hard-fought litigation, this Court granted Cytec's motion for summary judgment, holding that the SAPA "unambiguously provides that Allnex assumed all liabilities for remediation of the Kalamazoo site."  (Memorandum and Order dated June 19, 2017 ("June 19 Order") at 2, ECF No. 138.)

The SAPA also unambiguously provides that Cytec is entitled to attorneys' fees and litigation expenses incurred in the prosecution of this declaratory judgment action.  Under Section 6 of the SAPA, Allnex must indemnify Cytec for "all reasonable attorneys' fees and other reasonable out-of-pocket disbursements" incurred in respect of any "claims, demands, actions, suits, [or] proceedings" brought "by any Person" relating to "any Assumed Liabilities." (SAPA §§ 6.2, 6.3(c).)  And this Court has expressly held that the "remediation of the historical environmental liabilities at the Kalamazoo site falls under the definition of 'Assumed Liabilities'" under the SAPA.  (June 19 Order at 13.)  "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees," *Hensley* v. *Eckerhart*, 461 U.S. 424, 440 (1983), and here Cytec was completely successful on summary judgment.

The factors that courts in this District consider in assessing attorneys' fees support the reasonableness of Cytec's request for $8,053,401.38 in attorneys' fees and $366,715.67 in litigation expenses.  *First*, Cytec only seeks reimbursement for fees and expenses that the client Cytec has actually paid.  "[T]he fact that . . . a sophisticated business client[] has paid" the fees charged by counsel "is prima facie evidence of the reasonableness of the amount" of those fees. *Diplomatic Man, Inc.* v. *Nike, Inc.*, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (Lynch, J.).

*Second*, the rates charged are comparable to prevailing market rates in this District for complex commercial litigation, and are reasonable given the complexity of the legal

and factual issues in dispute, the amount in controversy, and the sophistication and experience of counsel.

*Third*, the hours expended are likewise reasonable:  a core team of four Sullivan & Cromwell LLP ("S&C") attorneys handled the lion's share of the work over three years of federal litigation, from initial pleadings to trial preparation, including full document, deposition, and expert discovery and summary judgment briefing.  And the number of hours billed by Cytec's counsel are comparable to the number of the hours billed by Allnex's counsel.

*Fourth*, Cytec has reduced the fees and expenses it is seeking from those actually incurred in this litigation by more than $825,000 based on generous estimates of work performed unrelated to the environmental liabilities claim.  For each relevant time period, Cytec estimated the percentage of work performed on disputes that have settled to reduce this fee request to approximate the cost of litigating the environmental dispute as a stand-alone matter.

*Finally*, with respect to expenses, courts in this District have routinely held that expenses of the type billed here—*i.e.*, expert services, deposition costs, and other administrative costs—are reimbursable.  And Cytec's requested litigation expenses are nearly 35 percent lower than those Allnex incurred.  In sum, Cytec respectfully submits that it is entitled to the full amount of its request for attorneys' fees and litigation expenses.[1]

## BACKGROUND

This case arose out of the purchase by Allnex of Cytec's coating resins business. The case began as a dispute about post-closing purchase price adjustments under the SAPA

---

[1] For the Court's convenience, a form of judgment is attached as Exhibit F to the Declaration of Thomas C. White, dated July 20, 2017 ("White Decl."), submitted herewith.

(Complaint dated March 7, 2014, ECF No. 2), and quickly expanded to include environmental liabilities.

A.      **The Parties' Environmental Dispute**

On March 26, 2014, Allnex sent Cytec a letter ("March 26 Letter") disavowing responsibility for certain environmental liabilities located at the Kalamazoo, Michigan site Allnex acquired under the SAPA.  (ECF No. 53–2.)  Cytec attempted to resolve this dispute as part of a broader settlement of the parties' purchase-price dispute.  On April 14, 2014, the parties reached an agreement in principle to settle their disputes; however, during the course of finalizing settlement papers, the parties failed to reach a final agreement.  (*See* White Decl. ¶ 6.)  As a result, on June 16, 2014, Cytec filed an Amended Complaint seeking a declaratory judgment from this Court that "all environmental liabilities at the Kalamazoo, Michigan site are Assumed Liabilities under the [SAPA]."  (Amended Complaint dated June 16, 2014 ("Am. Compl.") at 34, ECF No. 14.)  The Amended Complaint also added claims relating to workers' compensation and tax indemnification, but the environmental dispute accounted for the vast majority of legal work incurred in preparing the Amended Complaint.  (Am. Compl. ¶¶ 135–47; Declaration of Joseph E. Neuhaus dated July 3, 2017 ("Neuhaus Decl.") ¶ 10.b., ECF No. 140.)

Both parties turned to the law firms that had handled the corporate transaction, who were familiar with the complex transaction documents and knew the potential witnesses, to represent them in the resulting litigation.  (White Decl. ¶ 4.)  On July 8, 2014, the parties attended an initial pretrial conference where this Court encouraged the parties to settle their disputes.  (White Decl. ¶ 8.)  The parties agreed to submit their disputes, including the environmental dispute, to mediation.  At the mediation on September 3, 2014, the parties again failed to reach a final agreement.  (*Id.* ¶ 9.)

Allnex moved to dismiss the Amended Complaint on October 1, 2014, arguing, with respect to the environmental dispute, that Cytec's claim was not ripe and that the disputed liabilities were not Assumed Liabilities under the SAPA.  (ECF No. 25 at 19–22.)  On May 15, 2015, the Court denied Allnex's motion to dismiss the environmental claim.  (ECF No. 36 at 22–25.)  In particular, the Court rejected Allnex's contention that the March 26 Letter "did not make demands" and merely served as a "reservation of rights," finding that the March 26 Letter "s[ought] reimbursement" and made other "demand[s]" concerning the parties' respective responsibility over environmental contamination that created "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  (*Id.* at 24 (internal quotation marks omitted).)

### B.   Document Discovery

After the Court's ruling, the parties proceeded to discovery.  The parties exchanged document requests in August 2015 and, after months of meet-and-confers and exchanging drafts, the parties agreed to a Protective Order, a Stipulation Regarding Production of Electronically Stored Information, a Stipulation Regarding Discovery Protocols, and document search terms.  (White Decl. ¶ 11; *see* ECF No. 80.)

During fact discovery, Cytec's counsel reviewed more than 65,000 documents, including documents in German and Dutch and documents produced by third parties.  (Neuhaus Decl. ¶ 10.c., Ex. B-7; White Decl. ¶¶ 13–14.)  Many documents relating to environmental

liabilities were highly technical, such as Phase II environmental site assessment reports.[2]  Cytec's

counsel worked with an expert on environmental liabilities, John Barkett, to assist in analyzing

these documents.  (White Decl. ¶ 15.)  In March 2016, the parties reached an agreement to settle

their purchase price and tax indemnification disputes (the "First Settlement").  (Neuhaus Decl.

¶ 8.)

### C.   Depositions and Expert Discovery

After the First Settlement, the parties took depositions focused almost entirely on

the environmental dispute.  (Neuhaus Decl. ¶ 10.d.)  In April 2016, Cytec took four fact

depositions and defended fact five depositions.  (White Decl. ¶¶ 20, 22.)  One of the key

witnesses—Ronald Ayles, a German national who negotiated the SAPA for Allnex—was

deposed in London at his counsel's request.  (*Id*. ¶¶ 20–21.)  In April 2016, the parties exchanged

requests for admission and interrogatories.  (*Id.* ¶ 23.)

The parties also undertook expert discovery of industry custom and practice

concerning the transfer of environmental liabilities.  (*Id.* ¶¶ 24–27.)  S&C worked with

Mr. Barkett to prepare his 87-page report, which offered his opinions on the SAPA and the

record evidence—including the technical details of the contamination—based on his review of

the record.  (*Id.* ¶ 24.)  S&C defended Mr. Barkett's deposition on July 12, 2016.  (*Id.* ¶ 25.)

S&C also analyzed the report submitted by Allnex's expert, Jeffrey Gracer, and took his

---

[2] There was motion practice during the discovery process arising out of Allnex's assertions of
privilege.  (Memorandum and Order dated June 23, 2016 ("June 23 Order") at 6–7, ECF No. 76.)
Cytec attempted to resolve this issue through the meet-and-confer process, but Allnex ultimately
refused to produce these documents.  (White Decl. ¶ 17.)  On April 20, 2016, Cytec filed a
motion to compel (ECF No. 59), and the Court directed Allnex to produce 10 "exemplars" for *in
camera* review.  (ECF No. 58.)  The Court held oral argument on May 6, 2016, and, on June 23,
2016, rejected or significantly narrowed Allnex's privilege assertions for seven of the 10
exemplars.  (June 23 Order at 6–7.)  Pursuant to the Court's Order, Allnex reversed or narrowed
its privilege claims for 78 documents.  (White Decl. ¶ 18.)

deposition on July 18, 2016.  (*Id.* ¶ 27.)

In June 2016, the parties again agreed to submit their disputes, including the environmental dispute, to mediation.  (*Id.* ¶ 30.)  On July 12, 2016, the parties reached an agreement to settle their workers' compensation dispute.  (Neuhaus Decl. ¶ 8.)  The parties also attempted to settle their environmental dispute but, for the third time, failed to do so.  (White Decl. ¶ 30.)

### D.    **Summary Judgment and Trial Preparation**

From July 2016 through February 2017, the parties devoted substantial time and resources to preparing for trial.  Cytec prepared a 310-document exhibit list, designated and counter-designated more than 13,000 lines of deposition testimony, developed its witness list, and coordinated with those witnesses to prepare five declarations (in lieu of direct testimony at trial).  (*Id.* ¶¶ 32–33, 36; ECF Nos. 85–89.)  Cytec also reviewed Allnex's 118 exhibits, more than 10,000 lines of deposition designations and counter-designations, and four witness declarations.  (White Decl. ¶¶ 33, 37; ECF Nos. 90–93.)  The parties exchanged objections on August 12, August 26, and October 4, 2016; met and conferred extensively to attempt to resolve those objections; revised their witness declarations in response to the objections; and coordinated to prepare Stipulations of Fact and a Proposed Joint Pretrial Order.  (White Decl. ¶¶ 33, 35, 37–38, 40.)  The parties also submitted 111 pages of briefing for motions *in limine* (White Decl. ¶ 41), in which each party moved to exclude the other's expert testimony and Allnex moved to exclude one of Cytec's trial exhibits.  (ECF Nos. 95, 106, 109.)

Pursuant to an agreed-upon pretrial schedule, the parties cross-moved for summary judgment on Cytec's environmental claim in November 2016, generating more than 150 pages of briefing accompanied by more than 160 exhibits.  (White Decl. ¶¶ 31, 39; ECF Nos. 99, 101, 103, 119–21, 124–25, 130, 132–33.)  On June 19, 2017, the Court granted

summary judgment for Cytec on its environmental claim, holding that the SAPA "unambiguously provides that Allnex assumed all liabilities for remediation of the Kalamazoo site." (June 19 Order at 2.)

## I.    CYTEC IS ENTITLED TO ATTORNEYS' FEES AND LITIGATION EXPENSES UNDER THE SAPA.

Section 6.3 of the SAPA provides that Allnex must indemnify Cytec for "any Losses"—which the SAPA specifically defines to include "expenses of enforcement of obligations" and "all reasonable attorneys' fees and other reasonable out-of-pocket disbursements" in respect of any "claims, demands, actions, suits, [or] proceedings"—brought "by any Person" relating to "any Assumed Liabilities." (Neuhaus Decl. Ex. A, SAPA §§ 6.2, 6.3(c).) In its May 15, 2015 decision denying Allnex's motion to dismiss the environmental claim, the Court expressly rejected Allnex's argument that the March 26 Letter "did not make any demands," finding that it "s[ought] reimbursement" and made other "demand[s]" concerning the parties' respective responsibility over environmental contamination. (ECF No. 36 at 24 (internal quotation marks omitted).)

In briefing the cross-motions for summary judgment, the parties agreed that the SAPA entitled the prevailing party to attorneys' fees here. Cytec noted in its moving papers that:

> Under Section 6.3(c) of the SAPA, Cytec is entitled to recovery of any "Losses"—defined in Section 6.2(a) to include "all reasonable attorneys' fees and other reasonable out of pocket disbursements"—incurred "in respect of claims, demands or suits (by any Person) to the extent directly or indirectly relating to or arising out of . . . any Assumed Liabilities." This Court has already held that Allnex's March 26, 2014 disavowal of responsibility for the Assumed Liabilities at Kalamazoo constituted a "demand," which is why the Court rejected Allnex's motion to dismiss on the ground that this claim was not ripe. (ECF No. 36 at 23–24.) Accordingly, Cytec is entitled to its fees because this declaratory judgment action was a reasonable step in its defense against Allnex's demand. *See, e.g.*, *Pfizer, Inc.* v. *Stryker Corp.*, 348 F. Supp. 2d 131, 145–46 (S.D.N.Y. 2004)

> (granting attorneys' fees for "prosecuting the declaratory judgment action").

(ECF No. 103 at 50 n.21.)  Allnex agreed that the prevailing party would be entitled to fees here, but argued that it would be entitled to its fees because the disputed liabilities were not "Assumed Liabilities" but "Excluded Liabilities":

> Under the SAPA, Cytec may claim attorneys' fees only "to the extent" that this action relates to or arises out of any Assumed Liabilities.   (Ex. 1, SAPA § 6.3(c), DX-34 at ALLNEX-00080797.)  But the liabilities for which Cytec disclaims responsibility are not Assumed Liabilities; they are Excluded Liabilities.   For that reason, Allnex, not Cytec, is entitled to an award of attorneys' fees. (*Id.* § 6.2(a)(iii), DX-34 at ALLNEX-00080796.)

(ECF No. 124 at 25 n.29.)  The Court's June 19, 2017 decision confirmed that the disputed historical environmental liabilities were, in fact, "Assumed Liabilities" under the SAPA.  (June 19 Order at 13.)

Apart from this agreement that the prevailing party would be entitled to its fees, the SAPA is clear that Section 6.3 allows for reimbursement of attorneys' fees and other costs of litigation brought by one party against the other:

- The definition of "Losses" that are indemnified refers specifically to "expenses of enforcement of obligations" "by any Person," which necessarily refers to claims between the parties (Neuhaus Decl. Ex. A, SAPA §§ 6.2(a), 6.3);

- The SAPA contains separate procedures for indemnification of "Third-Party Claims" and "Other Claims" (*id.* §§ 6.4(a), (c)); and

- The SAPA provides for indemnification of claims arising out of breaches of representations, warranties, and covenants between the parties, which, again, are necessarily claims between the parties (*id.* § 6.3(a), (c)).

These unambiguous contractual provisions demonstrate that Cytec is entitled to its attorneys' fees and expenses incurred in prosecuting this declaratory judgment action as a matter of law. *See*, *e.g.*, *Pfizer, Inc.* v. *Stryker Corp.*, 348 F. Supp. 2d 131, 145–46 (S.D.N.Y. 2004) (granting

attorneys' fees for prosecuting declaratory judgment action between parties to sale of business, noting that, *inter alia*, "[i]t is difficult to imagine a third-party action as a result of the indemnifying party's misrepresentation") (internal quotation marks omitted); *Promuto* v. *Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 650–52 (S.D.N.Y. 1999) (granting attorneys' fees in contract dispute because contract included both a general indemnification provision and third-party indemnification provision, which "evinces a clear intent to distinguish between inter-party claims and third-party claims"); *Abax Lotus Ltd.* v. *China Mobile Media Tech. Inc.*, 149 A.D.3d 535, 535 (1st Dep't 2017) (indemnification provision was not "limited to third-party claims" because provision "includes a distinct section referencing third-party claims, [which] clearly implies that the parties intended the provision to apply to certain intra-party claims").

## II.    CYTEC'S REQUEST FOR FEES AND EXPENSES IS REASONABLE.

The factors that courts in this District consider when weighing applications for attorneys' fees and expenses confirms that Cytec's request is reasonable.

"In determining whether attorney fees are reasonable, the court must adopt a 'presumptively reasonable fee,' with an hourly rate that reflects 'what a reasonable, paying client would be willing to pay.'" *Harris* v. *Fairweather*, 2012 WL 5199250, at *5 (S.D.N.Y. Oct. 19, 2012) (Castel, J.) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008)).   "In considering the reasonableness of a fee application, a court weighs the time and labor required, the novelty and difficulty of the questions, the level of skills required, the amount in controversy and the experience, reputation and ability of counsel." *Bacolitsas* v. *86th & 3rd Owners, LLC*, 2013 WL 10620139, at *1 (S.D.N.Y. Apr. 1, 2013) (Castel, J.) (citing *Arbor Hill*, 522 F.3d at 186 & n.3, 190).  In addition, and as particularly relevant here, the court should consider results obtained.  *Hensley* v.

*Eckerhart*, 461 U.S. 424, 440 (1983) ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.").

>     **A.**     **The Fees and Expenses Cytec Actually Paid Are Presumptively Reasonable.**

Cytec has paid in the ordinary course virtually all of the fees and expenses that it seeks in this application.[3]   "[T]he amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate." *Reiter* v. *Metro. Transp. Auth.*, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) (collecting cases); *see Arbor Hill*, 522 F.3d at 190 ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Themis Capital* v. *Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("[T]he fact that Themis, the plaintiff, has paid Dechert's bills in full at these rates supplies a form of market confirmation as to their reasonableness.").  Indeed, "when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable." *Wells Fargo Bank, NA* v. *Konover*, 2014 WL 3908596, at *6 (D. Conn. Aug. 8, 2014), *aff'd*, 630 F. App'x 46 (2d Cir. 2015); *see Diplomatic Man*, 2009 WL 935674, at *6 ("[T]he fact that Nike, a highly sophisticated business client, has paid these bills, presumably after careful review by its general counsel or other senior business executives, is prima facie evidence of the reasonableness of the amount as a whole (beyond just the reasonableness of the hourly rates charged), since Nike could not have assumed that it would be reimbursed in full, or even in part.").

---

[3] The two most recent invoices (totaling $40,711.09) remain outstanding, but they are expected to be paid in due course.  (Neuhaus Decl. ¶ 14.)  *See Diplomatic Man, Inc.* v. *Nike, Inc.*, 2009 WL 935674, at *6 n.6 (S.D.N.Y. Apr. 7, 2009) (Lynch, J.) (granting motion for fees and expenses where client "had paid all bills through October 2008 and there is no reason to believe that the lack of payment of bills beyond that date is attributable to anything other than processing time").

Here, Cytec—a multinational corporation and sophisticated consumer of legal services—received invoices detailing $9,619,116.18 of fees and expenses incurred and has paid $9,578,405.09 to date.  (Neuhaus Decl. ¶¶ 9, 14, Exs. B-1, C; White Decl. Ex. B (S&C bank statements).)   Its request for $8,420,117.05 relating to the environmental dispute is thus presumptively reasonable as a matter of law.

> **B.** **Cytec's Counsel's Billing Rates Are Reasonable and Consistent with Prevailing Rates in New York for Complex Commercial Litigation.**

"The best evidence of a reasonable fee rate is the amount actually charged by counsel." *Anderson* v. *YARP Rest., Inc.*, 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997) (collecting cases).  The following table shows the rates Cytec's counsel actually charged for their work on this case from 2014 to 2017 for each of the attorneys who billed more than 10 hours to this matter:[4]

| Attorney | Title | Billing Rate(s) | Years Admitted to Bar in 2017 |
|---|---|---|---|
| Joseph Neuhaus | Partner | $1,390 – $1,700 | 31 |
| Thomas White | Associate / Special Counsel / Partner | $850 – $1,150 | 9 |
| Joshua Levy | Associate | $700 – $995 | 5 |
| James Shih | Associate | $815 – $950 | 1 |
| Lauren Mendolera | Associate | $800 – $850 | 6 |
| Matthew Belgiovine | Associate | $665 – $700 | 1 |

(*See* Neuhaus Decl. Ex. C.)   In addition, paralegals, e-discovery personnel, and other legal support staff working under attorneys' direction were billed at hourly rates ranging from $135 to $425 per hour:

---

[4] In addition, an experienced German-speaking Swiss lawyer, Vanessa Deglise, assisted on the matter and was billed at rates of $495 – $520 per hour.  A recent law school graduate (billed at $520 per hour) and summer associates (billed at $220 – $280 per hour) also worked on the matter.  This chart does not include attorneys whose hours billed were *de minimis* and attorneys who worked on the underlying transaction and assisted the litigation team on factual issues.

| Position | Billing Rate(s) |
|---|---|
| Assistant to Managing Clerk | $135 – $240 |
| Distributions / Printing | $145 – $170 |
| E-Discovery and Litigation Support | $315 – $425 |
| Legal Assistants | $160 – $410 |
| Litigation Analysts[5] | $385 – $395 |
| Reference Librarian | $365 – $425 |

(*See* Neuhaus Decl. Ex. C.)

The rates charged by Cytec's counsel are reasonable, given the factual and legal complexity of this case.  Factually, Allnex's claim that it was only responsible for environmental contamination resulting from the manufacture of coating resins (ECF No. 53–2) required Cytec's counsel to understand the nature of the contamination at multiple facilities transferred under the SAPA, which required analysis of voluminous and highly technical documentation with the assistance of Mr. Barkett.  (*See* White Decl. ¶¶ 13, 15, 43.)  Cytec's counsel also needed to understand the details of selling a $1 billion business that spanned four continents.  (*Id.* ¶ 43.)

Cytec's counsel's legal work was likewise complex and varied.  Cytec's counsel closely analyzed the 124-page SAPA, an agreement accompanied by 667 pages of disclosure schedules and 549 pages of ancillary agreements.  (*Id.* ¶ 44.)  Additionally, Cytec had acquired all of the facilities it was selling (together with their environmental liabilities) in two prior transactions in 1993 and 2005 (Smith Decl. ¶¶ 5, 12–13, ECF No. 86), requiring legal analysis of two other lengthy commercial agreements.  (White Decl. ¶ 44.)  The dispute at issue raised questions of contract interpretation in light of various federal, state, and foreign environmental laws governing the transferred facilities located across multiple U.S. states and foreign countries. (*Id.* ¶ 44.)

---

[5] Litigation Analysts are law school graduates, generally admitted to the bar, engaged primarily in work on document discovery.

The bulk of the legal work was performed by just four attorneys, whose expertise in litigating complex disputes arising out of merger-and-acquisition agreements confirms the reasonableness of Cytec's counsel's billing rates:

- Joseph Neuhaus, a partner at S&C for 25 years, led Cytec's representation since the inception of the disputes between the parties, including advising the client on high-level strategic issues, taking or defending five depositions, and reviewing and approving all court filings. (*Id.* ¶ 46.a.) Mr. Neuhaus has been widely recognized as a leading practitioner of international commercial litigation, including as one of America's and the World's Leading Lawyers for Business by Chambers & Partners regularly over the last decade. (*Id.* Ex. A-1.) Mr. Neuhaus graduated from Columbia Law School in 1982, and served as a law clerk to U.S. Supreme Court Justice Lewis Powell. (*Id.*) Mr. Neuhaus billed 513.75 hours in his representation of Cytec in this case.[6] (*Id.* ¶ 46.a.)

- Thomas White, now a partner at S&C, performed the functions of a junior partner throughout this litigation. (*Id.* ¶ 46.b.) Mr. White oversaw all motion practice and trial preparation, and took or defended five depositions. (*Id.*) Mr. White, together with Mr. Neuhaus, also advised the client on high-level strategic issues. (*Id.*) With nearly a decade of experience representing global companies and financial institutions in complex commercial litigation, Mr. White has been recognized as a Rising Star by New York Super Lawyers continually over the last five years. (*Id.* Ex. A-2.) Mr. White graduated from Yale Law School in 2007, and served as a law clerk to Judge Loretta Preska of the U.S. District Court in the Southern District of New York. (*Id.*) Mr. White billed 2,100.50 hours in this matter. (*Id.* ¶ 46.b.)

- Joshua Levy, a sixth-year associate at S&C, was the senior associate for most of the litigation. (*Id.* ¶ 46.c.) Mr. Levy managed the discovery process, drafted briefs, negotiated evidentiary objections with opposing counsel, and took one deposition. (*Id.*) Mr. Levy's practice has focused on commercial litigation, employment disputes, and government investigations. (*Id.* Ex. A-3.) Mr. Levy graduated from New York University School of Law in 2011, and served as a law clerk to Judge I. Leo Glasser of the U.S. District Court in the Eastern District of New York. (*Id.*) Mr. Levy billed 2,790.75 hours in this matter. (*Id.* ¶ 46.c.)

- James Shih, a fourth-year associate at S&C, was the primary junior and mid-level associate for much of the litigation. (*Id.* ¶ 46.d.) Mr. Shih drafted briefs, prepared for and served as second chair in depositions, and supported discovery

---

[6] These hours, and those billed by the other attorneys, exclude work prior to the advent of the environmental dispute, and are subject to the percentage deductions set forth in the Neuhaus Declaration. (Neuhaus Decl. ¶ 10; *see infra* at Section II.C.1.)

and trial preparation.  (*Id.*)  Mr. Shih graduated from Yale Law School in 2013, and served as a law clerk to Judge Lorna Schofield of the U.S. District Court in the Southern District of New York.  (*Id.* Ex. A-4.)  Mr. Shih billed 1,780.50 hours in this matter.  (*Id.* ¶ 46.d.)

Moreover, Allnex was well aware that the prevailing party in this Action would recover attorneys' fees (ECF No. 124 at 25 n.29), yet it declined multiple opportunities to mitigate its fee risk by settlement (*see supra* at 4–7).  In publicly available bankruptcy court filings, S&C partners have billed at rates ranging from $1,190 to $1,285 per hour, associates have billed at $440 to $925 per hour (depending on class year), and support staff have billed at $290 to $385 per hour.  (*See* White Decl. Ex. C.)  And in this District, "partner billing rates in excess of $1,000 an hour, are by now not uncommon in the context of complex commercial litigation."  *Themis Capital*, 2014 WL 4379100, at *7; (White Decl. Ex. D (Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore*, N.Y.L.J. (Jan. 13, 2014) (as of October 2013, more than a quarter of large New York firms "charge[d] $1,000 per hour or more for contracts and commercial work"), http://www.newyorklawjournal.com/id=1202637587261/NLJ-Billing-Survey-1000-Per-Hour-Isnt-Rare-Anymore)); *see also McDonald ex rel. Prendergast* v. *Pension Plan of NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.").  In fact, Allnex's counsel billed at rates up to $1,190 per hour in this matter.  (White Decl. ¶ 51.b., Ex. E.)

### C.  Cytec's Counsel Billed a Reasonable Number of Hours in Prosecuting the Environmental Claims in This Case.

"[I]n determining contractual attorneys' fees, 'there is a strong presumption that . . . the hourly rate times hours expended[] represents the "reasonable" fee.'"  *VFS Fin., Inc.* v. *Pioneer Aviation, LLC*, 2009 WL 2447751, at *4 & n.7 (S.D.N.Y. Aug. 11, 2009) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 101 (2d Cir. 1992)) (collecting cases).  Here, as noted, where every invoice was reviewed and paid by Cytec's legal department (Neuhaus Decl. ¶ 14; White

Decl. Ex. B (S&C bank statements)), the amount of work done is presumptively reasonable. *Themis Capital*, 2014 WL 4379100, at *7; *Wells Fargo*, 2014 WL 3908596, at *6; *Diplomatic Man*, 2009 WL 935674, at *6.

1.   The Amount of Hours Expended Was Reasonable Given the Complexity and Procedural History of This Case and the Amount in Controversy.

The number of hours billed is also reasonable in light of the lengthy procedural history of this case, complex legal and factual issues it raised, and amount in controversy. Cytec was represented here by counsel who handled the underlying transaction for it (as was Allnex), which provided efficiencies in understanding the complexities of the transaction and the environmental issues. (White Decl. ¶ 4.) Nonetheless, this litigation has spanned more than three years, spanned two continents, and progressed from initial complaint to full trial preparation. (*See supra* at 4–8.)

Further, although this litigation only directly concerns the disputed environmental liabilities at the Kalamazoo site, the Court's ruling bears on all $35.1 million of known environmental liabilities and necessarily unquantified unknown environmental liabilities at all of the sites Allnex acquired under the SAPA. The SAPA provisions on "Assumed Liabilities" that govern the liabilities at Kalamazoo are virtually identical to those that govern the scope of liabilities at the sites that Allnex acquired around the world. (*See* SAPA at Annex I-5, -9 to -10, -15 to -16.) Allnex took the position in briefing to this Court that its interpretation of these provisions, under which it maintained that it was not responsible for contamination that did not result from the operation of the coating resins business, applied around the world. (ECF No. 99 at 27–28 (Allnex intended to seek "an indemnity from Cytec for non-coatings liabilities" among "$21 million in liabilities" at a facility in Belgium.).) This Court's ruling that the liabilities Allnex assumed under the SAPA "are not narrowly limited to liabilities that occurred exclusively

from the manufacture and production of coating resins" (June 19 Order at 14) thus protects Cytec from indemnification for tens of millions of dollars of known environmental liabilities, plus unknown liabilities.

Accordingly, this is a case in which the Court's ruling regarding the definition of Assumed Liabilities under the SAPA "transcend[s]" the "test case" presented, and will have "a direct and immediate effect" on all environmental liabilities, known and unknown, transferred under the SAPA.  *See Krumme* v. *Westpoint Stevens Inc.*, 79 F. Supp. 2d 297, 304–05, 307–08 (S.D.N.Y. 1999) (granting "fee award in excess of the amount involved in the litigation"), *rev'd on other grounds*, 238 F.3d 133 (2d Cir. 2000).  *See also Antidote Int'l Films, Inc.* v. *Bloomsbury Pub., PLC*, 496 F. Supp. 2d 362, 365–66 (S.D.N.Y. 2007) (awarding fees of "three times the jury's verdict" where "the instant action is determinative of the meaning of the Option Agreement in certain respects," which "makes it economically reasonable . . . for plaintiff to incur a fee in excess of the 'amount involved' in the litigation"); *Nat'l Union Fire Ins. Co.* v. *Hartel*, 782 F. Supp. 22, 42 (S.D.N.Y. 1992) (attorneys' fees of "more than 50% of the amount recovered" were "reasonable" because "the benefits of the litigation reached far beyond the amount sought in the immediate suit") (quoting *F.H. Krear & Co.* v. *Nineteen Named Trs.*, 810 F.2d 1250, 1264 (2d Cir. 1987)).

 2.  Cytec Has Reduced Its Fee Request To Reflect Work on Claims that Were Previously Settled.

Cytec has incurred $8,859,292.50 in attorneys' fees in prosecuting this action, but has reduced its fee request by over $800,000, to $8,053,401.38, to exclude fees related to claims the parties settled.  Cytec implemented these reductions on a conservative, percentage basis, in accordance with Supreme Court and Second Circuit precedent.

-17-

Specifically, and as further described in the Declaration of Joseph E. Neuhaus, dated July 3, 2017, the vast majority of the work incurred in the preparation of the Amended Complaint related to the environmental dispute, and Cytec reduced its fee request for this work by 20% to exclude work related to the parties' workers' compensation and tax indemnification disputes. (Neuhaus Decl. ¶ 10.b., Ex. B-2.) Cytec similarly reduced its fee request for the period from after it filed the Amended Complaint to March 2016, a period that was largely devoted to document discovery, by 20%; this is a conservative estimate because the work in this period related almost entirely to document review and production, and fully 92% of the documents produced related to the environmental dispute. (*Id.* ¶ 10.c., Exs. B-3 & B-7.) From March 2016 to July 2016, during which the parties took fact and expert depositions, Cytec reduced its fee request by 10% to exclude work related to the only other remaining dispute, the workers' compensation matter; again, this is a conservative estimate, because less than one percent of deposition pages and exhibits related to workers' compensation. (*Id.* ¶ 10.d., Ex. B-4.) Finally, from July 2016 to the Court's summary judgment decisions (a period in which the only remaining claims were the environmental claims), Cytec excluded all work related solely to its application for fees and expenses. (*Id.* ¶ 10.e., Ex. B-5.)

This kind of percentage deduction finds ample support in case law. The Supreme Court has explained that "the district court's consideration of a fee petition 'should not result in a second major litigation.'" *Webb* v. *Bd. of Educ.*, 471 U.S. 234, 244 n.20 (1985) (quoting *Hensley*, 461 U.S. at 437). Accordingly, "the district court is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fees application," *Marsion S. Mishkin Law Office* v. *Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014), but, rather, may "use a percentage deduction as a practical means" of analysis, *McDonald*, 450 F.3d at 96 (internal quotation marks omitted).

*See Fox* v. *Vice*, 563 U.S. 826, 838 (2011) (trial courts "may use estimates in calculating and allocating an attorney's time"); *N.Y. State Ass'n for Retarded Children, Inc.* v. *Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (affirming "percentage reductions" to attorneys' fees request because "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application") (collecting cases).[7]  (*See* Neuhaus Decl. ¶¶ 9–10 & Exs. B-1 to B-5.)

       3.     <u>Cytec's Fees Are Reasonable Given the Resources Marshaled by Allnex.</u>

Under Second Circuit precedent, "the district court should, in determining what a reasonable, paying client would be willing to pay, consider . . . the resources required to prosecute the case effectively []taking account of the resources being marshaled on the other side." *Arbor Hill*, 522 F.3d at 184; *see Serricchio* v. *Wachovia Secs., LLC*, 706 F. Supp. 2d 237, 254 (D. Conn. 2010) (awarding attorneys' fees where "[c]ounsel for both parties marshaled substantial resources to contest issues at every stage"), *aff'd*, 658 F.3d 169 (2d Cir. 2011).

In response to a subpoena, Allnex's counsel disclosed this week that Allnex incurred $5,015,087.04 in attorneys' fees through February 2017 in defending this action. (White Decl. App'x A.)  It incurred these fees through a mix of hourly rates and, after January 2016, flat fees.  (*Id.* ¶¶ 51.a.-c., Ex. E.)  Allnex's counsel refused to disclose its hourly rates, the hours worked, or any detail as to the work counsel did after December 2015.  (*Id.* ¶¶ 51.c.)  For the period for which counsel disclosed its rates and the hours worked, the amount of work done was comparable to the amount of work done by Cytec's counsel:  from April 2014 to December

---

[7] *See also Fox*, 563 U.S. at 838 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *Research Commc'ns, Ltd.* v. *Meredith Corp.*, 2008 WL 4183440, at *6 (D. Conn. Sept. 10, 2008) ("When presented with an extensively documented claim such as this, the court need not address in writing each and every entry; attorneys' fees requests should not become mini-trials.") (citing *Lunday* v. *City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).

2015, Allnex's counsel billed 2,098.10 hours and Cytec's counsel billed 2,183.75 hours.  (*Id.* Ex. E; Neuhaus Decl. Ex. B.)  The comparable number of hours—fewer than 100 hours apart over a 21-month period—strongly supports the reasonableness of Cytec's fee request.[8]

It appears that the hourly rates of Allnex's counsel and its support staff were generally somewhat below those charged by S&C.  For the period in which Allnex disclosed its counsel's rates, they ranged from $212 to $1,190 as compared to Sullivan & Cromwell's rates of $140 to $1,700.  (White Decl. Ex. E; Neuhaus Decl. Ex. B.)  The hourly rates of counsel for the prevailing party are not, however, limited to those of opposing counsel.  *Cf. Chambless* v. *Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) ("[T]he prevailing market rate test does not mandate equal fees for opposing counsel.")*.*  Rather, as discussed above (*see supra* Section II.B.), Cytec's counsel rates are within the range of those charged in this District in the context of complex commercial litigation.  *Themis Capital*, 2014 WL 4379100, at *7.  Indeed, as of October 2013—almost four years ago—more than a quarter of large New York firms charged more than $1,000 per hour for commercial work.  Sloan, *supra*.

**D.     Cytec's Request for Litigation Expenses Is Reasonable.**

Under the SAPA and Second Circuit precedent, Cytec is entitled to "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc– Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League* v. *Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)).  (*See* Neuhaus Decl. Ex. A, SAPA § 6.2 (defining "Losses" to include "reasonable out-of-pocket disbursements").

---

[8] In any case, the refusal to disclose the total hours worked or records of the work done bars Allnex from disputing the reasonableness of the number of hours billed by Cytec's counsel.  *Cf. Mugavero* v. *Arms Acres, Inc.*, 2009 WL 1904548, at *6 (S.D.N.Y. July 1, 2009) (excluding documents for opposing party's "failure to produce these documents in a timely manner").

Nearly half of Cytec's requested expenses consist of $178,694.32 for fees paid to Shook, Hardy & Bacon L.L.P. for expert services provided by Mr. Barkett.  (*See* Neuhaus Decl. ¶ 11.b., Ex. B-6; White Decl. ¶ 45.)   "[C]ourts in this District routinely reimburse prevailing parties for the costs of expert witnesses and consultants" in contractual cases.  *Themis Capital*, 2014 WL 4379100, at *9; *see Weiwei Gao* v. *Sidhu*, No. 2013 WL 2896995, at *6 (S.D.N.Y. June 13, 2013) (granting the full amount of expert fees requested because the expense was "reasonable and necessary," and because the "Fee Sharing Agreement provides for recovery of 'other costs incurred'"); *Austrian Airlines Oesterreichische Luftverkehrs AG* v. *UT Fin. Corp.*, 2008 WL 4833025, at *9 (S.D.N.Y. Nov. 3, 2008) (awarding full expert fees requested where the contract "clearly—and undisputedly—provide[d] for reasonable attorneys' fees 'and other costs'").   Here, as described above, Mr. Barkett assisted Cytec with analysis of environmental reports, prepared a 172-paragraph expert report providing his opinion on the SAPA and record evidence, prepared for and sat for his deposition, and prepared a 90-paragraph declaration as his "direct testimony at trial."  (ECF No. 88 at 1 & Ex. 2; White Decl. ¶¶ 24, 45; *see supra* at 6.)

The remaining expenses consist of those regularly awarded by courts in this Circuit.  *See King Vision Pay–Per–View Corp.* v. *Tardes Calenas Moscoro, Inc.*, 2004 WL 473306, at *5 (S.D.N.Y. March 12, 2004) (awarding photocopying expenses "consistent with what an outside photocopy service would have charged") (collecting cases); *Sulkowska* v. *City of New York*, 170 F. Supp. 2d 359, 370 (S.D.N.Y. 2001) (compensable "expenses charged to clients may include express mail, long distance telephone, local travel, and messenger service"):

- $32,326.48 for expenses incurred in taking and defending depositions, principally court reporting fees, videography fees, and transcript costs (Neuhaus Decl. ¶ 11.c.);

- $24,819.16 for expenses incurred in hiring temporary document reviewers (Neuhaus Decl. ¶ 11.d.); and

- $72,959.03 for expenses such as photocopies, teleconference hosting, and graphics. (Neuhaus Decl. ¶ 11.e.)

Cytec has reduced its request by more than $25,000 to exclude expenses related to claims the parties settled. (*See id.* ¶ 11.) Specifically, although Cytec incurred $391,944.26 in expenses in prosecuting this action, it is seeking to recover $366,715.67 that is attributable to litigation of the environmental claims. (*Id.* ¶ 11, Ex. B-6.) As with Cytec's calculation of attorneys' fees, "these estimates are uniformly conservative." (*Id.* ¶¶ 11–12.) And Cytec's requested litigation expenses are nearly 35 percent (or more than $190,000) lower than Allnex's expenses of $556,846.11. (White Decl. App'x A.)

## CONCLUSION

After more than three years of litigation, Cytec has completely prevailed on the environmental claim at issue on this application, and did so based on the plain language of the contract that was available to the parties from the outset. That contract unambiguously also requires that Allnex reimburse the reasonable costs of litigation that Cytec incurred in obtaining that result. Both parties spent millions of dollars on this case, and Cytec has paid its counsel in the ordinary course the full amount of fees sought on this application. The Court should award Cytec $8,053,401.38 in attorneys' fees and $366,715.67 in litigation expenses.

Dated:   New York, New York                  Respectfully submitted,
         July 20, 2017

                                             **SULLIVAN & CROMWELL LLP**

                                             By:   */s/ Joseph E. Neuhaus*
                                                   Joseph E. Neuhaus
                                                   Thomas C. White
                                                   Joshua S. Levy
                                                   James H. Shih
                                                   SULLIVAN & CROMWELL LLP
                                                   125 Broad Street
                                                   New York, New York  10004
                                                   Telephone:  (212) 558-4000

                                                   *Attorneys for Cytec Industries Inc.*