UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CYTEC INDUSTRIES INC.,

                Plaintiff,

      v.

ALLNEX (LUXEMBOURG) & CY S.C.A.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 14 Civ. 1561 (PKC)

# DECLARATION OF THOMAS C. WHITE

        I, Thomas C. White, hereby declare under penalty of perjury that the following is true and correct:

        1.      I am a partner of Sullivan & Cromwell LLP ("S&C"), counsel for Cytec Industries Inc. ("Cytec") in the above-captioned action. I am duly licensed to practice law in the State of New York and am admitted to practice in the Southern District of New York. The statements herein are of my own knowledge, and I can testify competently thereto.

        2.      I submit this declaration in support of Cytec's Motion for Attorneys' Fees and Litigation Expenses, dated July 20, 2017 ("Motion").

    **A.**    **The Parties' Environmental Dispute**

        3.      Cytec commenced this action against Allnex (Luxembourg) & Cy S.C.A. ("Allnex") on March 7, 2014. (ECF No. 2.) Cytec's claims in the initial complaint concerned certain post-closing adjustments to the purchase price under the October 8, 2012 Stock and Asset Purchase Agreement ("SAPA"), under which an entity (which came to be called Allnex) controlled by Advent International Corporation ("Advent") acquired Cytec's coating resins business. (*Id.*)

4. S&C was Cytec's transaction counsel in the sale of the coating resins business. Cytec retained S&C as its litigation counsel in this action.

5. On March 26, 2014, Thomas Tuori of Harter Secrest & Emery LLP, counsel for Allnex, sent a letter ("March 26 Letter") to Jeffry Koenig of Cytec seeking to "allocate[] . . . the Waste Management Units [("WMU")] . . . at the Kalamazoo Plant" on the basis that Allnex "is only responsible for . . . contamination" that "resulted from the 'Business.'" (ECF No. 53–2.) On April 2, 2014, Mr. Koenig responded to Mr. Tuori by letter, stating Cytec's position that it "reject[ed] Allnex's proposed allocation of environmental liabilities at the Kalamazoo facility" and "demand[ed] that Allnex honor its obligations to remediate and close all waste management units and areas of concern at the Kalamazoo facility." (Declaration of Thomas C. White dated November 4, 2016 (ECF No. 119) PX 293.)[1]

6. As Roy Smith, Cytec's then-General Counsel, testified, the parties thereafter entered into discussions to settle their disputes, including the environmental dispute. (Smith Dep. 206:19–208:2.) On April 14, 2014, the principals for Cytec and Advent—Mr. Smith; William Avrin, Cytec's then-Vice President of Corporate and Business Development (Avrin Decl. ¶ 1, ECF No. 85); and Ronald Ayles, a Managing Partner at Advent (Ayles Decl. ¶ 1, ECF No. 90)—held an in-person meeting in New York, at which they reached a global settlement in principle (Smith Dep. 206:19–208:2). During the course of finalizing the settlement papers, the parties could not reach a final agreement. (*Id.*)

7. On June 16, 2014, Cytec filed an Amended Complaint, reflecting the addition of a claim concerning environmental liabilities. (ECF No. 14 ¶¶ 130–34.) In the Amended Complaint, Cytec alleged that Allnex's disavowal of responsibility for remediating

---

[1] All PX references herein refer to exhibits attached to the Declaration of Thomas C. White dated November 4, 2016 (ECF No. 119), which were filed with the clerk of the court due to file size. We can provide copies of any document cited herein upon request.

contamination at the Kalamazoo facility was contrary to the "broad language" and structure of the SAPA, pursuant to which Allnex agreed to assume "all Liabilities . . . to the extent *related to*, or *used* or *held* in connection with, the Business as conducted at any time by Seller."  (*Id.* ¶¶ 90–96 (emphasis in original).)  Based on these allegations, "Cytec request[ed] a declaratory judgment that Allnex is responsible for all environmental liabilities associated with the Kalamazoo, Michigan facility, regardless of whether they predated Cytec's ownership of the facility or resulted from the Business."  (*Id.* ¶ 98; *see id.* at 34.)  The Amended Complaint also added claims relating to workers' compensation and tax indemnification arising from the SAPA.  (*Id.* ¶¶ 135–47.)

8. On July 8, 2014, the parties appeared for an initial pretrial conference before this Court.  At the conference, the Court strongly encouraged the parties to settle their disputes.  The parties agreed to submit their disputes, including the environmental dispute, to private mediation.  (ECF No. 22.)

9. The parties hired The Honorable Richard Holwell of Holwell Shuster & Goldberg LLP (and formerly of the U.S. District Court in the Southern District of New York) to serve as mediator.  The parties attended in-person mediation on September 3, 2014, but failed to reach an agreement.

10. Allnex filed its motion to dismiss the Amended Complaint on October 1, 2014. (ECF No. 24.)  With respect to the environmental claim, Allnex argued that it (i) was unripe, because the March 26 Letter "made no demand for payment" but merely served as a "reservation of rights"; and (ii) was foreclosed by "the plain language of the SAPA."  (ECF No. 25 at 3, 19–22.)  Cytec responded that (i) Allnex's argument mischaracterized the March 26 Letter, which made concrete demands and gave rise to a justiciable controversy; and (ii) Allnex assumed the disputed liabilities under the SAPA. (ECF No. 28 at 22–23.)  The Court held oral argument on May 6, 2015 where he directed the

parties to "submit correspondence indicating whether they agree to mediation," and Allnex declined to agree to mediation. (ECF No. 35.) On May 15, 2015, the Court denied Allnex's motion with respect to the environmental claim. (ECF No. 36.) The Court found that the March 26 Letter "'s[ought] reimbursement'" and otherwise made "demand[s]" concerning the parties' respective responsibility for environmental contamination that created "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (*Id.* at 23–24 (quoting *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 127 (2007)).)

### B. Document Discovery

11. The parties exchanged initial disclosures on August 28, 2015 and requests for production on August 31, 2015. Over the following three-and-one-half months, the parties met and conferred about the parameters of discovery by email, telephone conferences, and letters. On October 13, 2015, the parties agreed to a Stipulation and Proposed Order Regarding Production of Electronically Stored Information, addressing document metadata. On October 15, 2015, the parties agreed to a Stipulation and Proposed Protective Order Governing the Production and Exchange of Confidential Material, Discovery of Experts, and Inadvertent Production of Privileged Material, governing the use and handling of confidential information produced in discovery. (ECF No. 80.) On November 3, 2015, the parties agreed to a Stipulation Regarding Discovery Protocols ("Discovery Stipulation"), addressing document custodians, search terms, and attorney-client privilege. In December 2015, the parties agreed to the search terms to be applied to the documents of agreed-upon custodians.

12. Over the following three months, the parties reviewed and produced documents responsive to the negotiated documents requests. Based on the agreed-upon search terms, we collected and reviewed nearly 10,000 documents from Cytec and S&C

custodians.  (Declaration of Joseph E. Neuhaus dated July 3, 2017 ("Neuhaus Decl.") Ex. B-7, ECF No. 140.)  To minimize costs, we used S&C's own servers, staff attorneys, and litigation support staff instead of an outside discovery vendor to manage the review and production process.

13. In order to fully understand the environmental contamination for which Allnex was disclaiming responsibility, we issued six subpoenas to third parties:  ARCADIS U.S. Inc. ("ARCADIS") and Fishbeck, Thompson, Carr & Huber Inc. ("FTC&H"), environmental engineering firms that worked on the delineation and remediation of environmental contamination at the Kalamazoo facility; ENVIRON Germany GmbH ("ENVIRON"), an environmental consulting firm retained by Advent to conduct environmental due diligence on the facilities to be transferred under the SAPA; Harter Secrest & Emery LLP, Advent's outside counsel on environmental issues in the transaction; Marsh & McLennan Companies, Inc., an insurance broker retained by Advent to obtain insurance covering the unknown environmental liabilities at the transferred facilities; and XL Group plc, an insurer providing the primary layer of insurance covering the unknown environmental liabilities.  All of the documents produced by these third parties, totaling more than 41,000 documents, related to the environmental dispute.  (Neuhaus Decl. Ex. B-7.)

14. A number of documents that were produced were in German or Dutch, requiring foreign language reviewers.

15. Many documents relating to environmental liabilities were highly technical, such as Phase II environmental site assessment reports (*see, e.g.*, PX 37; PX 39; PX 48; PX 49; PX 58; PX 64), Waste Management Unit summaries by ARCADIS and FTC&H (*see* PX 56; PX 57), and ENVIRON's environmental due diligence report (PX 140).  To analyze these documents, we worked with John Barkett, an expert in the transfer of

environmental liabilities whom Cytec retained for this litigation, and Matthew Brennan, an environmental lawyer at S&C who had worked on the SAPA.

16. S&C lawyers reviewed more than 56,000 documents produced by Allnex and third parties.

17. During document discovery, Allnex withheld or redacted, or caused third parties to withhold or redact, at least 112 documents containing communications with non-attorney third parties on the basis of attorney-client privilege. (ECF No. 62 at 4 & n.3.) We met and conferred with Allnex's counsel to obtain these documents without court action, raising the issue in three letters dated February 1, February 22, and March 10, 2016 and discussing the same with Allnex's counsel on three telephone conferences on February 9, February 18, and March 23, 2016. Allnex refused to narrow its redactions or produce any of the withheld documents we challenged. On April 12, 2016, Cytec sought the Court's leave to file a motion to compel (ECF No. 56), which the Court granted on April 14, 2016. (ECF No. 58.) The Court also directed Cytec to select 10 "exemplars" for Allnex to submit for the Court's review *in camera*. (*Id.*)

18. On April 20, 2016, Cytec moved to compel the production of communications with third parties that Allnex had withheld or redacted on the basis of privilege. (ECF No. 62.) On May 6, 2016, the Court held oral argument, and, on June 23, 2016, the Court issued a Memorandum and Order ("June 23 Order") rejecting Allnex's privilege assertions for seven of the 10 exemplars, finding that "[l]egal advice was not sought, rendered or facilitated" in them. (ECF No. 76 at 6–7.) Following the June 23 Order, Allnex reversed or narrowed its privilege claims for 78 documents, and produced them or caused them to be produced to Cytec.

19. In February and March 2016, the parties engaged in ongoing settlement discussions. On March 9, 2016, the parties settled their purchase price and tax indemnification disputes. The parties again could not resolve the environmental dispute.

### C. Depositions and Expert Discovery

20. In April 2016, we took the depositions of four fact witnesses: Mr. Ayles, who led the negotiations for Advent (Ayles Decl. ¶ 12, ECF No. 90); Kevin Feinblum, who negotiated the environmental insurance policy (Feinblum Decl. ¶¶ 23–28, ECF No. 91); Douglas Bacon, a partner at Freshfields Bruckhaus Deringer LLP ("Freshfields") who represented Advent in the acquisition (Bacon Decl. ¶¶ 6–7, ECF No. 92); and Duncan Taylor, a former Cytec employee who became Allnex's CFO post-closing (*see* PX 271_T). To prepare for each of these depositions, we drafted detailed outlines, reviewed voluminous documents, and compiled and annotated exhibits.

21. I deposed Mr. Ayles on April 1, 2016. Mr. Ayles is a German national, and we traveled to London for the deposition at his counsel's request, given his scheduling commitments.

22. We also defended the depositions of five fact witnesses: Messrs. Smith and Avrin, who negotiated the SAPA for Cytec (Smith Decl.¶ 20–55, ECF No. 86; Avrin Decl. ¶¶ 9–31, ECF No. 85); Melissa Sawyer, a partner at S&C who represented Cytec in the sale (Sawyer Decl. ¶¶ 1, 10, ECF No. 87); Jeffry Koenig, Cytec's then-Chief Litigation Counsel who was involved in certain aspects of due diligence and the post-closing separation process (Koenig Decl. ¶¶ 17–46, ECF No. 89); and Michael Manning, Cytec's then-Vice President of Safety, Health & Environment who was involved in post-closing logistics. (*Id*. ¶¶ 34, 39–40.)

23. On April 4, 2016, the parties exchanged 27 requests for admission and 13 interrogatories, all of which concerned the environmental dispute. On May 6, 2016, the

parties exchanged responses and objections to the requests for admission and interrogatories. Allnex's requests for admission and interrogatories, which sought information about historical operations at the Kalamazoo facility and the sources of historical contamination, required substantial document searches and review and conferring with Cytec.

24. We worked with Mr. Barkett to prepare an 87-page expert report, which offered Mr. Barkett's opinions on industry custom and practice concerning the transfer of environmental liabilities. (ECF No. 88 at 48–134.) Mr. Barkett opined that (i) the SAPA lacked the types of provisions customarily found in agreements in which the seller retained environmental liabilities post-closing, and (ii) the parties' behavior throughout the sale process, as reflected in the voluminous record, was consistent with the buyer's assumption of all environmental liabilities at the transferred facilities. (*Id.* ¶ 172.) In drafting his report, Mr. Barkett reviewed 146 documents, including technical documents detailing the various contamination. (PX 308 Ex. III.)

25. I defended Mr. Barkett's deposition on July 12, 2016. We met with Mr. Barkett the day before to prepare him. Mr. Barkett traveled from Florida to New York for his deposition.

26. On June 10, 2016, Allnex served the 22-page report of its rebuttal expert, Jeffrey Gracer. (PX 309.)

27. In preparation for Mr. Gracer's deposition, we created a detailed outline based on our analysis of Mr. Gracer's report, as well as relevant publications by Mr. Gracer. I took Mr. Gracer's deposition on July 18, 2016.

28. Discovery closed on July 18, 2016. (ECF No. 69.)

29. The fact and expert witness depositions generated 2,772 transcript pages and 178 exhibits.

30. Pursuant to the Court's Civil Case Management Plan (ECF No. 44), which requires counsel to "meet face-to-face for at least one hour to discuss settlement . . . following the close of fact discovery," the parties submitted their disputes to mediation in June 2016, hiring JAMS mediator Marc Isserles. After an in-person mediation on June 24, 2016 (ECF No. 74), on July 6, 2016, the parties reached an agreement to settle the workers' compensation dispute. The parties could not resolve the environmental dispute.

D. **Summary Judgment and Trial Preparation**

31. On June 22, 2016, the Court entered a stipulated order that provided a schedule for pretrial submissions and summary judgment briefing to proceed in parallel. (ECF No. 75.)

32. On July 29, 2016, we provided to Allnex Cytec's 310-entry trial exhibit list. We also provided Cytec's deposition designations based on our review of 1,171 pages of deposition transcripts, and a proposed list of trial witnesses for Cytec's case in chief.

33. Based on our review of the 118 documents referenced on Allnex's trial exhibit list and 8,879 lines of deposition transcript designated by Allnex, we provided Cytec's objections to Allnex on August 12, 2016. We also provided Cytec's deposition counter-designations. In total, Cytec designated and counter-designated more than 13,000 lines of deposition testimony, and Allnex designated and counter-designated 10,495 lines of deposition testimony. On August 26, 2016, we provided Cytec's objections to Allnex's deposition counter-designations.

34. Cytec objected to 13 of Allnex's trial exhibits. Allnex objected to 119 of Cytec's trial exhibits.

35. From October 2016 to March 2017, the parties met and conferred by telephone and email over each of the objections to the trial exhibits and deposition designations interposed by both parties.

36. We worked with Messrs. Smith, Avrin, Koenig, and Barkett and Ms. Sawyer to draft their witness declarations. This process required us to review their deposition transcripts, analyze the voluminous record, and meet with them in person and by telephone.

37. On September 12, 2016, we provided to Allnex witness declarations for Ms. Sawyer and Messrs. Smith, Avrin, Koenig, and Barkett, and received witness declarations for Messrs. Ayles, Feinblum, Bacon, and Gracer. On October 4, 2016, after exchanging and reviewing witness declarations, the parties interposed objections. Over the next month, the parties met and conferred over these objections, and made revisions to the witness declarations to address those objections. On October 28, 2016, we filed the revised witness declarations for Ms. Sawyer and Messrs. Smith, Avrin, Koenig, and Barkett on October 28, 2016. (ECF Nos. 85–89.) These declarations totaled 121 pages.

38. Also on September 12, 2016, we provided to Allnex proposed stipulations of fact. Allnex proposed revisions to the stipulations, which led to additional meet and confers. On October 21, 2016, the parties filed the Stipulations of Fact. (ECF No. 83.)

39. On November 4, 2016, the parties filed cross-motions for summary judgment on Cytec's environmental claim. (ECF Nos. 98, 102.) These motions generated more than 150 pages of briefing, accompanied by more than 160 exhibits.

40. The parties coordinated to draft a Joint Pretrial Order, which they jointly submitted to the Court on November 11, 2016.

41. On November 7, 2016, each party filed a motion *in limine* to exclude the other party's expert. (ECF Nos. 95, 109.) Allnex also filed a motion *in limine* to exclude one of Cytec's trial exhibits—Ms. Sawyer's handwritten notes—on the ground that it was not produced in discovery (ECF No. 106), despite the parties' express agreement to exclude from

discovery the "hand-written notes[] of the Attorney Custodians" in the Discovery Stipulation. (ECF No. 113 at 8–14.)  The motions *in limine* generated 111 pages of briefing.

42. On June 19, 2017, the Court issued a Memorandum and Order granting Cytec's motion for summary judgment and denying Allnex's motion for the same, concluding that the SAPA "unambiguously provides that Allnex assumed all liabilities for remediation of the Kalamazoo site," because "the historical environmental liabilities at the Kalamazoo site fall[] under the definition of 'Assumed Liabilities.'"  (ECF No. 138 at 2, 13.)

### E.  Legal Work Performed and Litigation Expenses Incurred

43. This litigation involved complex factual issues.  Allnex challenged and sought discovery regarding the sources of environmental contamination at transferred sites under the SAPA—some of which date back to the nineteenth century—which required us to analyze highly technical environmental reports, often with the assistance of our expert, Mr. Barkett.  We also worked to reconstruct the complicated process of selling a billion-dollar business, from early 2012 when Cytec began preparing for the auction to the voluminous due diligence (much of which concerned environmental liabilities) to the bidding and negotiations involving multiple prospective buyers to signing, closing, and post-closing separation work.

44. The dispute also raised complex legal questions.  We closely analyzed the 124-page SAPA, which was accompanied by 667 pages in disclosure schedules and 549 pages in ancillary agreements.  We also analyzed a 168-page Transfer and Distribution and Agreement and 44-page Environmental Matters Agreement through which Cytec acquired some of the facilities and environmental liabilities at issue as part of a spin-off transaction from American Cyanamid Company in 1993.  And we analyzed a 125-page Stock and Asset Purchase Agreement in which Cytec acquired additional facilities and environmental liabilities at issue from UCB SA in 2005.  The contractual issues were further complicated by

the web of applicable laws giving rise to the environmental liabilities at each of the transferred facilities, which are located across multiple U.S. states and foreign countries. These laws included federal law (enforced by the U.S. Environmental Protection Agency), Michigan law (enforced by the Michigan Department of Environmental Quality), and Belgian law (enforced by a regional environmental regulator in Belgium known as OVAM). In addition, motion practice over discovery and pretrial issues raised numerous privilege and evidentiary issues. And the motion to dismiss raised questions of ripeness in the context of a declaratory-judgment action.

45. As discussed above, the complexity of the environmental issues required the assistance of Mr. Barkett. His firm, Shook, Hardy & Bacon L.L.P., was paid $178,694.32 for his expert services in this litigation, including preparing an 87-page, 172-paragraph expert report and 90-paragraph declaration (ECF No. 88) based on his review of the SAPA and the record.

46. At S&C, much of the work was undertaken by a small team of four attorneys with substantial experience in complex commercial litigation:

    a. Joseph Neuhaus, a partner at S&C for 25 years, led Cytec's representation since the inception of the disputes between the parties. Mr. Neuhaus advised the client on high-level strategic issues, took or defended five depositions, and reviewed and approved all court filings. Mr. Neuhaus billed 513.75 hours in his representation of Cytec in this case.[2] Attached as Exhibit A-1 hereto is a true and correct copy of Mr. Neuhaus's S&C website profile.

---

[2] The hours listed for each attorney exclude work prior to the advent of the environmental dispute.

  b. I am a partner at S&C, and performed the functions of a junior partner throughout this litigation. I oversaw all motion practice and trial preparation, and took or defended five depositions. I also advised the client on high-level strategic issues alongside Mr. Neuhaus. I billed 2,100.50 hours in my representation of Cytec. Attached as Exhibit A-2 hereto is a true and correct copy of my S&C profile.

  c. Mr. Levy, a sixth-year associate, was the senior associate for most of the litigation. Mr. Levy managed the discovery process, drafted briefs, negotiated evidentiary objections with opposing counsel, and took one deposition. Mr. Levy billed 2,790.75 hours in his representation of Cytec. Attached as Exhibit A-3 hereto is a true and correct copy of Mr. Levy's S&C profile.

  d. Mr. Shih, a fourth-year associate, was the primary junior and mid-level associate for much of the litigation. Mr. Shih drafted briefs, prepared for and served as second chair in depositions, and supported discovery and trial preparation. Mr. Shih billed 1,780.50 hours in his representation of Cytec. Attached as Exhibit A-4 hereto is a true and correct copy of Mr. Shih's S&C profile.

  47. In addition, the S&C team was supported by: (i) the S&C lawyers who worked on the transaction, who provided background on the complex transaction documents and the negotiating and due diligence history; (ii) junior and summer associates who conducted document review, legal research, and cite checking; (iii) litigation analysts who worked primarily on document discovery; (iv) litigation support personnel who worked on

electronic discovery; (v) legal assistants who worked on administrative tasks; and (vi) reference librarians who performed research.

**F.     Additional Exhibits**

48.     Attached as Exhibit B hereto are true and correct copies of S&C's bank account activity statements between March 17, 2014 and June 19, 2017 reflecting payments from Cytec to S&C.

49.     Attached as Exhibit C hereto are true and correct copies of excerpted bankruptcy court filings by S&C reflecting billing rates.

50.     Attached as Exhibit D hereto is a true and correct copy of an article titled "$1,000 Per Hour Isn't Rare Anymore" that appeared in the New York Law Journal on January 13, 2014.

51.     Attached as Exhibit E hereto are true and correct copies of Freshfields' Responses and Objections to Cytec's subpoena, and invoices produced by Freshfields. Based on our analysis of these documents, Freshfields's billing practices in this action were as follows:

a. From March 2014 (when the initial Complaint was filed) to May 2015 (when the Court ruled on the motion to dismiss), Freshfields billed hourly with a 15% discount. Billing rates for selected Freshfields attorneys are as follows:

| Attorney | Title | Billing Rate | Discounted Rate (15%) |
|---|---|---|---|
| Claude Stansbury | Partner | $1,100 | $935 |
| Timothy Harkness | Partner | $1,025 | $871.25 |
| Matthew Herman | Partner | $1,025 | $871.25 |
| Stephanie Hundertmark | Partner | $1,033.73 | $878.67 |
| Gabrielle Gould | Partner | $975 | $828.75 |
| Doug Bacon | Partner | $975 | $828.75 |
| Samuel Rubin | Senior Associate | $795 | $675.75 |
| Paul Humphreys | Senior Associate | $725 | $616.25 |

b. From June 2015 to December 2015, Freshfields billed hourly without a discount. Billing rates for selected Freshfields attorneys are as follows:

| Attorney | Title | Billing Rate(s) |
|---|---|---|
| Claude Stansbury | Partner | $1,100 – $1,190 |
| Timothy Harkness | Partner | $1,025 – $1,065 |
| Matthew Herman | Partner | $1,025 – $1,085 |
| Dana Post | Special Counsel | $825 |
| Samuel Rubin | Senior Associate | $795 – $800 |
| Paul Humphreys | Senior Associate | $765 – $785 |
| Scott Eisman | Senior Associate | $730 |

c. From January 2016 to February 2017, Freshfields states that it "charged Allnex a flat fee and did not bill on an hourly basis." (Ex. E at 5.) Freshfields refused to produce individual time entries or hourly rate information for this period.

d. Freshfields has also produced invoices of Robert Half Legal (a legal temp agency), totaling $62,552.72, and Deloitte Financial Advisory Services LLP (litigation support), totaling $418,137.86.

Attached hereto as Appendix A is a chart prepared by S&C summarizing the invoices produced by Freshfields.

52. Attached as Exhibit F hereto is a proposed judgment.

Dated:  New York, New York
   July 20, 2017

               /s/ Thomas C. White
               Thomas C. White

**Appendix A**

| Invoice Date | Total From Invoice | Disbursements | Attorneys' Fees (Discounted when applicable) | Attorneys' Fees (Not Discounted) | Invoice From |
|---|---|---|---|---|---|
| 4/25/2014 | $153,977.84 | $295.79 | $153,682.05 | $180,802.05 | Freshfields |
| 5/13/2014 | $97,361.92 | $126.18 | $97,235.74 | $114,397.00 | Freshfields |
| 6/16/2014 | $38,695.51 | $51.54 | $38,643.97 | $45,463.50 | Freshfields |
| 7/30/2014 | $68,300.89 | $1,371.30 | $66,929.59 | $78,740.70 | Freshfields |
| 8/18/2014 | $45,576.97 | $22.50 | $45,554.47 | $53,593.50 | Freshfields |
| 9/16/2014 | $29,968.51 | $465.01 | $29,503.50 | $34,710.00 | Freshfields |
| 10/23/2014 | $109,181.74 | $621.87 | $108,559.88 | $127,717.50 | Freshfields |
| 11/17/2014 | $29,186.85 | $191.65 | $28,995.20 | $34,112.00 | Freshfields |
| 12/16/2014 | $41,334.43 | $135.78 | $41,198.65 | $48,469.00 | Freshfields |
| 2/19/2015 | $6,823.47 | $101.25 | $6,722.23 | $7,908.50 | Freshfields |
| 3/11/2015 | $1,502.37 | | $1,502.38 | $1,767.50 | Freshfields |
| 4/14/2015 | $248.62 | | $248.63 | $292.50 | Freshfields |
| 6/8/2015 | $14,131.43 | $66.91 | $14,064.53 | $16,546.50 | Freshfields |
| 7/15/2015 | $49,595.36 | $372.71 | $49,222.65 | $57,909.00 | Freshfields |
| 8/4/2015 | $124,455.23 | $(75.77) | $124,531.00 | $124,531.00 | Freshfields |
| 8/20/2015 | $31,546.82 | | $31,546.82 | $31,546.82 | Freshfields |
| 9/29/2015 | $31,941.80 | $35.30 | $31,906.50 | $31,906.50 | Freshfields |
| 10/20/2015 | $44,127.50 | | $44,127.50 | $44,127.50 | Freshfields |
| 11/30/2015 | $86,439.07 | $28.06 | $86,411.01 | $86,411.01 | Freshfields |
| 12/18/2015 | $92,246.24 | $85.74 | $92,160.50 | $92,160.50 | Freshfields |
| 1/8/2016 | $311,614.16 | $4,273.90 | $307,340.26 | $307,340.26 | Freshfields |
| 4/21/2016 | $689,700.53 | | $1,180,000.00 | $1,180,000.00 | Freshfields |
| 4/21/2016 | $400,000.00 | | $400,000.00 | $400,000.00 | Freshfields |
| 7/29/2016 | $694,019.91 | $59,019.71 | $635,000.00 | $635,000.00 | Freshfields |
| 9/27/2016 | $200,000.00 | | $200,000.00 | $200,000.00 | Freshfields |
| 10/20/2016 | $200,000.00 | | $200,000.00 | $200,000.00 | Freshfields |
| 12/12/2016 | $201,729.45 | $1,729.49 | $200,000.00 | $200,000.00 | Freshfields |

| Invoice Date | Total From Invoice | Disbursements | Attorneys' Fees (Discounted when applicable) | Attorneys' Fees (Not Discounted) | Invoice From |
|---|---|---|---|---|---|
| 12/12/2016 | $200,535.70 | $535.75 | $200,000.00 | $200,000.00 | Freshfields |
| 12/14/2016 | $200,397.93 | $397.93 | $200,000.00 | $200,000.00 | Freshfields |
| 1/27/2017 | $200,000.00 |  | $200,000.00 | $200,000.00 | Freshfields |
| 2/24/2017 | $206,302.93 | $6,302.93 | $200,000.00 | $200,000.00 | Freshfields |
| 1/21/2016 | $57,211.53 | $57,211.53 | N/A |  | Robert Half Legal |
| 2/4/2016 | $5,341.19 | $5,341.19 | N/A |  | Robert Half Legal |
| 1/28/2016 | $60,877.30 | $60,877.30 | N/A |  | Deloitte |
| 2/25/2016 | $84,986.90 | $84,986.90 | N/A |  | Deloitte |
| 5/11/2016 | $195,171.00 | $195,171.00 | N/A |  | Deloitte |
| 6/23/2016 | $37,658.90 | $37,658.90 | N/A |  | Deloitte |
| 7/6/2016 | $9,588.40 | $9,588.40 | N/A |  | Deloitte |
| 9/2/2016 | $9,588.40 | $9,588.40 | N/A |  | Deloitte |
| 11/16/2016 | $5,466.96 | $5,466.96 | N/A |  | Deloitte |
| 1/9/2017 | $4,000.00 | $4,000.00 | N/A |  | Deloitte |
| 2/28/2017 | $4,000.00 | $4,000.00 | N/A |  | Deloitte |
| 4/5/2017 | $4,000.00 | $4,000.00 | N/A |  | Deloitte |
| 6/1/2017 | $2,800.00 | $2,800.00 | N/A |  | Deloitte |
| **Total** | **$5,081,633.76** | **$556,846.11** | **$5,015,087.04** | **$5,135,452.84** |  |